## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **JUAN RUBIO,** | § | |
| **TDCJ No. 01863058,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **VS.** | § | **CIVIL NO. SA-21-CV-01299-FB** |
| | § | |
| **BOBBY LUMPKIN, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are *pro se* petitioner Juan Rubio's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1), Memorandum in Support (ECF No. 6), and Supplemental Memorandum in Support (ECF No. 7).  In these pleadings, petitioner challenges the constitutionality of his 2013 state court conviction for aggravated robbery, arguing, in fourteen points of error, that he received ineffective assistance from both trial and appellate counsel and that the trial court made several erroneous rulings.  Also before the Court are Respondent Bobby Lumpkin's Answer (ECF No. 13) and Petitioner's Replies (ECF Nos. 18, 19) thereto.

Having reviewed the record and pleadings submitted by both parties, the Court concludes petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  *See* 28 U.S.C. § 2254(d).  Petitioner is also denied a certificate of appealability.

## I.  <u>Background</u>

In June 2013, a Bexar County jury convicted petitioner of one count of aggravated robbery with a deadly weapon.  *State v. Rubio*, No. 2011CR3435 (144th Dist. Ct., Bexar Cnty.,

Tex. June 7, 2013); (ECF No. 14-2 at 4-5).  Following a separate punishment hearing, the trial court found petitioner to be a repeat offender and sentenced him to forty years of imprisonment. *Id*.

On direct appeal, the Fourth Court of Appeals of Texas affirmed petitioner's conviction in an unpublished opinion.  *Rubio v. State*, No. 04-13-00436-CR, 2014 WL 1319336 (Tex. App.—San Antonio, Apr. 2. 2014, pet. ref'd); (ECF No. 14-15).  Petitioner initially did not appeal this decision but was later granted permission to file an out-of-time petition for discretionary review (PDR).  *Ex parte Rubio*, No. 90,049-01 (Tex. Crim. App.); (ECF No. 14-27).  The Texas Court of Criminal Appeals ultimately refused his PDR on December 18, 2019.  *Rubio v. State*, No. PD-0852-19 (Tex. Crim. App.) (ECF No. 14-22).

Thereafter, petitioner challenged the constitutionality of his conviction by filing an application for state habeas corpus relief on March 5, 2021.  *Ex parte Rubio*, No. 90,049-03 (Tex. Crim. App.); (ECF No. 14-44 at 4-35).  Based, in part, on the findings of the state habeas trial court, the Texas Court of Criminal Appeals eventually denied the application without written order on December 15, 2021.  (ECF No. 14-36).

Petitioner initiated the instant federal proceedings on December 23, 2021.  (ECF No. 1 at 18).  In this petition (ECF No. 1) and the memorandum in support (ECF No. 6) that later followed, petitioner raised a total of five allegations challenging the constitutionality of his underlying state court conviction.  On December 30, 2021, petitioner filed a supplemental memorandum in support (ECF No. 7) raising an additional nine claims for relief.

## II.  Petitioner's Allegations

In his original federal petition (ECF No. 1) and memorandum in support (ECF No. 6), petitioner set forth the following claims for relief:[1]

(1)     Trial counsel rendered ineffective assistance by failing to challenge potential juror No. 22 during voir dire despite his expressing a bias against the law;

(2)     Trial counsel rendered ineffective assistance by failing to challenge potential juror No. 33 during voir dire despite his expressing a bias against defendants who do not testify on their own behalf;

(3)     Trial counsel rendered ineffective assistance during the plea bargain process by failing to convey the State's plea offer of 15 years to him;

(4)     Trial counsel rendered ineffective assistance during the plea bargain process by failing to communicate his acceptance of the State's 15-year plea offer to the State; and

(5)     Trial counsel rendered ineffective assistance during the plea bargain process by miscommunicating the 15-year plea offer.

Petitioner also raises the following claims in his supplemental memorandum in support (ECF No. 7) filed on December 30, 2021:

(6)     Trial counsel rendered ineffective assistance by failing to review police reports and indictments with him, failing to answer questions or advocate on his behalf, and failing to advise him about probation eligibility;

(7)     Trial counsel rendered ineffective assistance by failing to a secure a ruling on the voluntariness of petitioner's statement before it was admitted into evidence;

(8)     Appellate counsel rendered ineffective assistance by failing to raise a claim on direct appeal concerning the voluntariness of the statement;

(9)     Appellate counsel rendered ineffective assistance by failing to secure an adequate appeal record and by failing to a raise a claim on direct appeal concerning the trial court's failure to give a jury instruction on voluntariness;

---

[1]
      For reasons unknown to the Court, respondent reordered petitioner's allegations into five general claims, three of them with multiple subparts.  (ECF No. 13 at 2-3).  For clarity's sake, the Court has ordered the allegations as originally listed by petitioner.

(10)     Trial counsel rendered ineffective assistance by failing to object to State's Exhibit 4 concerning the waiver of petitioner's *Miranda* rights;

(11)     Trial counsel rendered ineffective assistance by failing to notice that part of the interrogation video was missing and for failing to have the video suppressed;

(12)     The trial court erred in holding that the phone calls submitted by the State in State's Exhibit 5 was not a custodial interrogation;

(13)     The trial court erred by denying the admission of Defense Exhibit 1, which also denied petitioner the right to present an alternative defense to the charges against him; and

(14)     The trial court erred by improperly acting as an advocate for the State.

### III.  Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA.  28 U.S.C.A. § 2254.  Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *Brown v. Payton*, 544 U.S. 133, 141 (2005).  This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous.  *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).  Even

a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102.  Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold."  *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

## IV.  Analysis

### A.    The Statute of Limitations (Claims 6-14).

Respondent first contends that the allegations not raised in petitioner's original federal habeas petition and memorandum in support—i.e., all of the claims raised in his supplemental memorandum in support (ECF No. 7)—are barred by the one-year limitation period of 28 U.S.C. § 2244(d).  Section 2244(d) provides, in relevant part, that:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—
>
>     (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.

In this case, petitioner's conviction became final March 17, 2020, ninety days after the Texas Court of Criminal Appeals refused his PDR and when the time for filing a petition for writ of certiorari to the United States Supreme Court expired.  *See* Sup. Ct. R. 13; *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) ("§ 2244(d)(1)(A) . . . takes into account the time for filing a certiorari petition in determining the finality of a conviction on direct review").

As a result, the limitations period under § 2244(d) for filing a federal habeas petition challenging the underlying conviction expired a year later on March 17, 2021.  Because petitioner did not file his § 2254 petition and supplemental memorandums in support until December 2021—over nine months after the limitations period expired—federal habeas relief would be barred by the one-year statute of limitations unless either statutory or equitable tolling applied.

1.    Statutory Tolling

Petitioner does not satisfy any of the statutory tolling provisions found under 28 U.S.C. § 2244(d)(1).  There has been no showing of an impediment created by the state government that violated the Constitution or federal law which prevented petitioner from filing a timely petition. 28 U.S.C. § 2244(d)(1)(B).  There has also been no showing of a newly recognized constitutional right upon which the petition is based, and there is no indication that the claims could not have been discovered earlier through the exercise of due diligence.  28 U.S.C. § 2244(d)(1)(C)-(D).

Petitioner is, however, entitled to statutory tolling under 28 U.S.C. § 2244(d)(2), which provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  As discussed previously,

petitioner challenged his state court conviction by filing a state habeas application on March 5, 2021, which was later denied by the Texas Court of Criminal Appeals on December 15, 2021. Accordingly, petitioner's state habeas application tolled the limitations period for a total of 286 days, making any federal challenge to his state conviction due by December 28, 2021.

Because petitioner filed his initial § 2254 petition on December 23, 2021, and his memorandum in support on December 28, 2021, the allegations raised in these pleadings (Claims 1-5) are timely.  But petitioner's remaining allegations (Claims 6-14) do not meet the same fate.  This is because petitioner did not raise these allegations in his first two pleadings (ECF Nos. 1, 6), but instead waited until December 30, 2021—two days after the limitations period expired—to raise these allegations in his supplemental memorandum in support (ECF No. 7).  Consequently, while petitioner's first five claims are timely, his remaining allegations (Claims 6-14) are barred by the one-year limitation period of 28 U.S.C. § 2244(d).

      2.    <u>Equitable Tolling</u>

In some cases, the limitations period may be subject to equitable tolling.  The Supreme Court has made clear that a federal habeas corpus petitioner may avail himself of the doctrine of equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *McQuiggin v. Perkins*, 569 U.S. 383, 391 (2013); *Holland v. Florida*, 560 U.S. 631, 649 (2010).  However, equitable tolling is only available in cases presenting "rare and exceptional circumstances," *United States v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002), and is "not intended for those who sleep on their rights."  *Manning v. Epps*, 688 F.3d 177, 183 (5th Cir. 2012).

Petitioner contends that equitable tolling should apply because he did not receive timely notice that the Texas Court of Criminal Appeals denied his state habeas application on

December 15, 2021.  (ECF No. 18).  According to petitioner, he did not receive notification of the state court's decision until December 23, 2021, thus he should be entitled to tolling for the eight-day difference.  It is without question that the Texas Court of Criminal Appeals is legally obligated to notify a petitioner once a decision has been rendered on his habeas petition.  *See* Tex. R. App. P. 77.4(a).  And long delays in receiving notice of state court action may warrant equitable tolling.  *See Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000) (four-month delay may qualify for equitable tolling); *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999) (finding that a delay in receiving information for "months and months" may qualify for equitable tolling). However, to warrant tolling under such circumstances, a petitioner must not only demonstrate a "substantial" delay in receiving notice of the denial of a state habeas corpus application, he must also show he "pursued the [habeas corpus relief] process with diligence and alacrity" both before and after receiving notification.  *Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009); *Phillips*, 216 F.3d at 511 (requiring that a petitioner show diligence upon notification). Petitioner has made neither showing in the present case.

To start, petitioner has not established a long or substantial delay in receiving notice of the Texas Court of Criminal Appeal's action.  Available records indicate that petitioner was mailed a notice of the court's action on December 15, 2021, the same day relief was denied.[2] Petitioner indicates that he received this notification a little over a week (8 days) later, on December 23, 2021.  While inconvenient in this particular situation, a delay of only a week does not constitute an extraordinary circumstance that triggers the possibility of equitable tolling.

Regardless, petitioner fails to demonstrate that he has been pursuing his rights diligently. Petitioner's conviction became final in March 2020, yet he waited an entire year before challenging his conviction in an application for state habeas corpus relief.  (ECF No. 14-44 at 4-

---

[2]       *See* http://www.search.txcourts.gov, search for "Rubio, Juan" last visited February 20, 2024.

35).  This delay alone weighs against a finding of diligence.  *See Stroman v. Thaler*, 603 F.3d 299, 302 (5th Cir. 2010) (affirming the denial of equitable tolling where the petitioner had waited seven months to file his state application); *see also North v. Davis*, 800 F. App'x 211, 214-15 (5th Cir. 2020) (unpublished) (finding an "eleven-month delay in filing his initial state application weighs against a finding of diligence.").  Consequently, because petitioner fails to assert any specific facts showing that he was prevented, despite the exercise of due diligence on his part, from timely filing in this Court, his supplemental allegations (Claims 6-14) are untimely and barred by § 2244(d)(1).

       3.    <u>Petitioner's new claims do not "relate back."</u>

Lastly, Federal Rule of Civil Procedure 15(c)(2) instructs that an amended pleading relates back to the date of the original pleading when the claim asserted in the amended pleading "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  Whether an amended claim relates back to the date of an earlier filed pleading depends on whether that claim asserts a new ground for relief supported by facts that differ in both time and type from those set forth in the original pleading.  *Mayle v. Felix*, 545 U.S. 644, 650 (2005).  Only those claims in the amended pleading that are tied to a common core of operative facts as the claims in the original petition will relate back to the original petition and will be considered timely filed.  *Id*. at 664.

Petitioner's new allegations (Claims 6-14) are not tied to a common core of operative facts with the original five claims for relief.  *Id*. at 664.  Quite the opposite, petitioner's original claims (Claims 1-5) only concern trial counsel's performance during voir dire and in communicating an alleged plea offer made by the State.  (ECF Nos. 1, 6).  None of the new claims raised in petitioner's supplemental memorandum in support involve counsel's

performance in these areas. (ECF No. 7). While several of the new claims allege ineffective assistance by trial counsel, "[n]ew claims of ineffective assistance of counsel do not automatically relate back to prior ineffective assistance claims simply because they rest on the same constitutional violation." *United States v. Gonzalez*, 592 F.3d 675, 679-80 (5th Cir. 2009) (ineffective-assistance claim does not relate back to original petition when original claims involve an "entirely distinct type of attorney misfeasance" from the claim asserted in the amended pleading) (citation omitted). Because petitioner's new allegations (Claims 6-14) are completely unrelated to the claims raised in the first petition (Claims 1-5), the new claims are barred by the statute of limitations.

**B.     The Remaining Allegations (Claims 1-5).**

Petitioner's first five allegations assert that his trial counsel rendered ineffective assistance prior to his June 2013 trial for aggravated robbery. In Claims 1 and 2, petitioner faults counsel for failing to strike two potential jurors during voir dire. In Claims 3 through 5, petitioner alleges that counsel failed to accurately communicate plea offer information both to himself and to the State. Each of these allegations were raised and rejected during petitioner's state habeas proceedings. As discussed below, petitioner fails to demonstrate that the state habeas court's rejection of these allegations was either contrary to, or an unreasonable application of, Supreme Court precedent.

1.     The *Strickland* Standard

The Court reviews Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel (IATC claims) under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's

performance was deficient and (2) this deficiency prejudiced his defense. *Strickland*, 466 U.S. at 687-88, 690. According to the Supreme Court, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-89. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the "likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Finally, IATC claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated the IATC claims on the merits, a court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *See Woods v. Etherton*, 578 U.S. 113, 117 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)); *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standards," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101. That is to say, the question to

be asked in this case is not whether counsel's actions were reasonable, but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id*. at 105.

      2.     <u>Voir Dire</u> (Claims 1, 2).

In his first two claims, petitioner argues that counsel was ineffective for failing to prevent certain biased jurors from being empaneled on the jury.  Specifically, petitioner contends: (1) potential juror No. 22 indicated an unwillingness to follow the law due to religious beliefs, and (2) potential juror No. 33 was biased against defendants, like petitioner, who did not testify on their own behalf.  Petitioner faults counsel for failing to excuse the "biased" jurors by either filing a challenge for cause or using a peremptory strike.

In the context of determining whether the failure to strike an allegedly partial juror constitutes deficient performance, a court must first evaluate whether the juror at issue was actually biased.  *Virgil v. Dretke*, 446 F.3d 598, 608-10 (5th Cir. 2006).  A juror harbors an actual bias, such that he may be excluded for cause, if his "views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000) (*quoting Wainwright v. Witt*, 469 U.S. 412, 424 (1985)).  On federal habeas corpus review, proof of actual bias requires a showing that the juror in a given case had "such fixed opinions that they could not judge impartially the guilt of the defendant."  *Chavez v. Cockrell*, 310 F.3d 805, 811 (5th Cir. 2002).  It is petitioner's burden to prove that a biased juror served on his jury.  *See Smith v. Phillips*, 455 U.S. 209, 215 (1982) (stating that prospective jurors are presumed impartial).

      Petitioner fails to make this showing.  Regarding potential juror No. 22, petitioner contends the juror should have been struck because he expressed a bias against the one-witness rule.  Petitioner bases this allegation on the following discussion that took place during voir dire:

[COUNSEL]          Now, what about the one witness?  Can you convict on one witness?  Y'all have an instruction that you can.  You'll have an instruction that if the person doesn't take the stand, you can't use that against him.  Can y'all follow the instructions?  That's all it is; listen to the evidence, follow the instructions.

                                 We have some religious problems here.  Can you follow the instructions?  The instructions will be, if you find beyond a reasonable doubt, then you must find the person guilty regardless of religion, regardless of what you feel.  Reasonable doubt is your reasonable doubt.  It's not going to be defined for you.  Who cannot do that?

* * *

[COUNSEL]          Yes.   Number 22?   You—you—even with that type of instruction, you still won't be able to make a decision.

[JUROR]              Yeah.   It's engrained in my background.   I mean it's coming out of the Bible and the Mosaic law that basically you should at least have two witnesses because one witness, he—he can either get it wrong from his viewpoint, he can be conspiring to give false testimony, so if you have two witnesses, that's better.   That's better to back everything up.

[COUNSEL]          I appreciate your—I appreciate you sharing that with me.

(ECF No. 14-4 at 140-42).   Neither counsel nor the State asked any follow up questions, challenged potential juror No. 22 for cause, or used a peremptory strike.

Because counsel passed away during petitioner's direct appeal proceedings, the record is silent as to his reasons for allowing potential juror No. 22 on the jury.  (ECF No. 14-44 at 108).  However, given the juror's defendant-friendly viewpoint regarding the one-witness rule—that there should be at least two witnesses to convict, and not just one—it appears imminently reasonable to have done so.  *See Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) ("When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect.").  Regardless, the juror's statement hardly

demonstrates a "fixed opinion" that would prevent him from impartially judging whether or not petitioner was guilty.  *Chavez*, 310 F.3d at 811.

Petitioner's allegation concerning potential juror No. 33 is similarly unpersuasive. Petitioner contends potential juror No. 33 should have been struck because he indicated that he would find petitioner guilty if he did not take the stand.  The juror did, in fact, raise his hand when counsel initially asked if anyone would find petitioner guilty if he did not testify.  (ECF No. 14-4 at 134).  Petitioner faults counsel for failing to ask any follow-up questions to either rehabilitate the juror or uncover any bias.  But while counsel did not ask juror No. 33 any further questions, the record indicates that he asked several questions of other jurors who answered the same way.  *Id*. at 134-37.  After discussing with the jurors the different reasons a defendant may have for not testifying, counsel again asked if anyone would still find a defendant guilty simply because they did not take the witness stand.  *Id.* at 137-38.  This time, juror No. 33 did not respond.  *Id*.  Thus, contrary to petitioner's assertion, the record does not demonstrate that potential juror No. 33 had such fixed views that would "prevent or substantially impair" his performance as a juror, if chosen.  *Witt*, 469 U.S. at 424.

In sum, petitioner has not established that either juror in question harbored a bias against him.  As a result, counsel cannot be deficient for failing to challenge either of these two jurors. *See Miller v. Thaler*, 714 F.3d 897, 904 n.6 (5th Cir. 2013) (counsel is not required to make futile motions or objections); *see also Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) (counsel cannot be deficient for failing to press a frivolous point).  Accordingly, federal habeas relief must be denied because petitioner fails to meet his burden of proof under the AEDPA.  28 U.S.C. § 2254(d).

3.      <u>Plea Offer</u> (Claims 3-5)

In his next three claims, petitioner contends that his trial counsel was ineffective during the plea bargain process prior to trial.  Specifically, petitioner argues that counsel: (1) failed to convey the State's offer of 15 years, (2) failed to communicate to the State that he would accept such an offer, and (3) generally miscommunicated relevant information regarding the State's plea offer.  Petitioner bases these allegations on the following discussion that took place on the record prior to voir dire:

[COUNSEL]        Juan, come here.

Now, just for the record, I want to make sure that you understand, okay, during the pendency of these cases, there have been several offers conveyed to you regarding an offer to resolve this with a plea agreement; right?  And the final offer—well, they've been everywhere from reducing it to a robbery with 22 years to do, taking into consideration two other cases, and then—or run two other cases concurrent and then take one into consideration.  So they would run the two officer assault cases concurrent with the 22 years, and then taking into consideration the harassment.

They offered a cap of 17 years with no—no app with the same type of—of offer on the other 22 cases.

They offered, prior to that, 20 years to do and take into consideration any other cases.  At one point, there was an offer of just robbery with a—a cap of 17 years.  That was rejected.

You countered back that you'd take 15 and run it concurrent with the other cases.  *That's been rejected by the State*.

Is that your understanding of where we are today and that's a fair representation of the offers that have been extended to you that you have rejected?

You have to answer.

[DEFENDANT]     Yes, sir.

(ECF No. 14-4 at 9-10) (emphasis added).   At this point, there was a discussion between petitioner, counsel, and the State regarding petitioner's other pending charges, the enhancements alleged in those cases, and the possible punishment ranges of those cases.   Then the trial judge entered the courtroom:

| | |
|---|---|
| [COURT] | Larry, where are you-guys at? |
| [COUNSEL] | We are still going over the plea. |
| [COURT] | We're going to need to bring the panel in if you-guys don't have a deal. |
| [STATE] | Mr. Rubio, you admitted the first offense. You admitted the first offense. |
| [DEFENDANT] | I didn't admit anything. |
| [STATE] | *You've got a very good deal.* |
| [DEFENDANT] | I—no, I didn't. |
| [STATE] | *For 15 years in four cases?  It's a very good deal.* |
| [COURT] | All right.  Everybody have a seat. |
| [COUNSEL] | Okay.  So you understand— |
| [DEFENDANT] | We're not talking the other cases, we're talking about the robbery. |
| [COUNSEL] | So you understand what the plea offers are in this case today and you understand what can happen in these other cases? |
| [DEFENDANT] | Yes, yes. |
| [COUNSEL] | Okay. |
| [STATE] | And you understand that the plea offers that have been made are to take care of all four cases? |
| [DEFENDANT] | No, but all four cases I didn't do.  That's—that's what they're saying I'm accused of, fighting with an officer. |

[COUNSEL]          Okay.

[COURT]             Have a seat.

*Id*. at 13-14 (emphasis added).

Citing the above discussion, petitioner asserts that the State had offered a plea bargain of 15 years for the four cases but counsel failed to convey, or miscommunicated, the offer to him. Had he known of the offer, petitioner contends, he would have taken it.  Petitioner is correct that an attorney's failure to communicate a plea offer can indeed constitute ineffective assistance. *See Missouri v. Frye*, 566 U.S. 134, 145 (2012) (finding the right to effective assistance of counsel extends to the consideration of plea offers).  In general, defense counsel "has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."  *Id*.  To establish that prejudice resulted from a failure to communicate an offer, a petitioner must demonstrate both (1) a reasonable probability the offer would have been accepted, and (2) a "reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it[.]"  *Id*. at 147.

Here, petitioner fails to establish that the State ever made a formal offer of 15 years for all four cases prior to trial.  As reiterated above, counsel made a point of placing all of the offers made by the State on the record before voir dire began.  (ECF No. 14-4 at 9-10).  The record shows that the best offer made by the State was a cap of 17 years only on the robbery charge, which petitioner rejected.  *Id*.  Although petitioner countered with an offer of 15 years for all four cases, the State rejected this offer.  *Id*.  Petitioner agreed that this was "a fair representation of the offers" that had been extended at that time.  While the State later indicated a willingness to agree to the 15-year offer, there is no evidence that this offer had been officially conveyed by the

State prior to this discussion.  (ECF No. 14-4 at 14).  As such, counsel cannot be found deficient for failing to convey the offer.

Regardless, even assuming counsel was deficient, petitioner still cannot show he would have accepted the 15-year plea deal if it had been offered by the State.  Quite the opposite, the record demonstrates that petitioner was unwilling to "admit anything," particularly with the other charges that were separate from his robbery charge.  *Id*.  Thus, based on the record before the Court, it appears unlikely petitioner would have chosen to accept a plea offer of 15 years had it previously been offered by the State.  Indeed, petitioner made no effort to clarify the State's position once the offer was mentioned on the record.  *Id*.  For this reason, the state habeas trial court concluded that petitioner "was more interested in denying any wrongdoing than in understanding what the State's best plea offer actually was."  (ECF No. 14-44 at 110).

The state habeas trial court's findings and conclusions were ultimately adopted by the Texas Court of Criminal Appeals when it denied petitioner's state habeas application.  (ECF No. 14-36).  Petitioner has not furnished this Court with clear and convincing evidence showing the state habeas court's findings on this subject were incorrect.  *See Matamoras v. Stephens*, 783 F.3d 212, 216 (5th Cir. 2015) (recognizing the presumption of correctness afforded a state habeas court's factual findings applies absent clear and convincing evidence to the contrary); *Ward v. Stephens*, 777 F.3d 250, 268 (5th Cir. 2015) (same).  Nor has petitioner established that the state court's ruling on trial counsel's performance "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Consequently, viewing this allegation under the deferential standard that applies on federal habeas review, petitioner has not shown that the state court's decision was objectively unreasonable or that he is entitled to relief on his IATC claim.  Federal habeas corpus relief is therefore denied.

## V. <u>Certificate of Appealability</u>

The Court must now determine whether to issue a certificate of appealability (COA).  *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).  A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Supreme Court has explained that the showing required under § 2253(c)(2) is straightforward when a district court has rejected a petitioner's constitutional claims on the merits:  The petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).  This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller–El*, 537 U.S. at 336 (citation omitted).

The issue becomes somewhat more complicated when the district court denies relief on procedural grounds.  *Id*.  In that case, the petitioner seeking COA must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012) (citing *Slack,* 529 U.S. at 484).  In that case, a COA should issue if the petitioner *not only* shows that the

lower court's procedural ruling is debatable among jurists of reason, but also makes a substantial showing of the denial of a constitutional right.

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief. As such, a COA will not issue.

## VI. Conclusion and Order

After careful consideration, the Court concludes petitioner has failed to establish that the state court's rejection of his first five allegations on the merits during petitioner's state habeas proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented during petitioner's state trial and habeas corpus proceedings. The Court also concludes that the remainder of petitioner's allegations are barred from federal habeas corpus relief by the statute of limitations set forth in 28 U.S.C. § 2244(d).

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.      Federal habeas corpus relief is **DENIED** and petitioner Juan Rubio's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2.      No Certificate of Appealability shall issue in this case; and

3.      All other motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so ORDERED.

SIGNED this 22nd day of February, 2024.

FRED BIERY
UNITED STATES DISTRICT JUDGE